

FILED
SUPERIOR COURT
OF GUAM

2014 APR 25 PM 4: 15

CLERK OF COURT
BY

## IN THE SUPERIOR COURT OF GUAM

GALO ECLAVEA CAMACHO, in his capacity as Executor of the Estate of Catalina Eclavea Camacho,

Plaintiff,

v.

WILLIAM M. PEREZ,

Defendant.

CIVIL CASE NO. CV0612-13

**DECISION AND ORDER**

## INTRODUCTION

This matter came before the Honorable Vernon P. Perez on January 3, 2014 on Defendant's Motion to dismiss for failure to state a claim upon which relief can be granted, or in the alternative, summary judgment, and Plaintiff's Cross-Motion for summary judgment. Attorneys Seth Forman and Edward S. Terlaje were present on behalf of the Plaintiff. Attorney Ignacio C. Aguigui was present on behalf of the Defendant. The Court took the matter under advisement. Having considered the parties' arguments and pleadings, the Court now issues the following Decision and Order.

## BACKGROUND

This case involves a parcel of property located in Barrigada, Guam ("Lot 5280"). On October 27, 1940, Jose Muna Camacho owned Lot 5280. (Compl. ¶ 5). In 1950, the Naval Government of Guam filed a Declaration of Taking in the District Court of Guam (Civil Case No. 34-50), which included Lot 5280. (Compl. ¶ 6). On May 27, 1955, the Island Court of Guam issued a Decree Settling Final Account of Administratix and Final distribution in *In the*

*matter of the Estate of Jose Muna Camacho* (Probate Case No. 36-45). (Compl. ¶ 7). In that case, the court awarded Lot 5280 to Jose Muna Camacho's widow, Catalina Eclavea Camacho ("Catalina"). On March 5, 1959, judgment was entered in the takings case (Civil Case No. 34-50), awarding Catalina $32,600 for property including Lot 5280. (Compl. ¶ 8). On June 19, 1967, Catalina quitclaimed her interest in Lot 5280 to Galo Eclavea Camacho ("Galo"). (Compl. ¶ 9). On June 28, 1967, Galo quitclaimed his interest in Lot 5280 to Defendant William M. Perez ("William"). (Compl. ¶ 10). On June 8, 1990, the U.S. Government conveyed certain real property, inclusive of Lot 5280 to the Guam Community College ("GCC"). (Compl. ¶ 11). On May 15, 2012, GCC conveyed real property, inclusive of Lot 5280, to the Guam Ancestral Lands Commission ("GALC"). (Compl. ¶ 12). On June 27, 2012, the GALC quitclaimed Lot 5280 back to Catalina's Estate as referenced and taken in Civil Case No. 34-50. (Compl. ¶ 13). In essence, Galo now claims that he is the rightful owner of the portion of Lot 5280, which was most recently conveyed back to Catalina's Estate. To the contrary, William claims that he is the rightful owner of Lot 5280 pursuant to the Guam Supreme Court's decision in *Taitano v. Lujan*, 2005 Guam 26. The fundamental issue, however, is whether only a portion of Lot 5280 was conveyed, or whether the entire Lot 5280 was conveyed. To Galo, Lot 5280 consisted of portions, only one of which was not condemned by the U.S. government, and was then conveyed to William.[1] To William, Lot 5280 is undivided and there is nothing to indicate that Lot 5280 is anything less than what the records show.

//

//

---

[1] Galo refers to this portion as the "green" portion, as illustrated on the exhibits submitted. For ease of reference throughout this decision, the Court will refer to the piece of land that Galo claims to have conveyed to William as the "green" portion.

On May 21, 2013, Galo filed a complaint against William to quiet title and to seek a judgment forever enjoining William from claiming any estate, right, title or interest in the portion of Lot 5280 most recently returned by the U.S. government.

On July 15, 2013, William filed a motion to dismiss for failure to state a claim upon which relief can be granted, or in the alternative for summary judgment in his favor as owner of the subject property. William first argues that the deed from Galo was a valid transfer of a future interest pursuant to 21 GCA §§ 1226, 1228, and 1230. William cites to *Taitano v. Lujan*, 2005 Guam 26, arguing that Catalina had an enforceable right to Lot 5280, even if the return of the land was highly improbable and entirely outside her control. (Def's. Mot. at 6). As a result, Catalina had an alienable contingent future interest in Lot 5280. *Id.*

Secondly, William argues that his claim to Lot 5280 is superior to Galo's under Guam's subsequently acquired title doctrine. Specifically, William argues that any title subsequently acquired when the property was returned by the U.S. government passed to him by operation of law. *Id.* Further, William argues that both Catalina and Galo transferred title to Lot 5280 in fee simple. (Def's Mot. at 8). Finally, William argues that his claim is superior to Galo's under Guam's race-notice statute because his 1967 quitclaim deed was recorded prior to the 2012 quitclaim deed from the GALC to the Catalina Camacho's estate.

On August 12, 2013, Galo filed an opposition to William's motion and also a cross-motion for summary judgment. Galo first argues that the deed in question did not grant a Guam Ancestral Lands Future Interest or what Galo refers to as a "GALFI." Galo points out that when the U.S. exercised its eminent domain power to take property on Guam, it took the property in fee simple. (Pl's. Opp. at 7). Therefore, any interest in the return of the property, or any interest at all in the property was fully extinguished. *Id.*

Galo argues that the quitclaim deed is distinguishable from the grant deed in *Taitano*, and granted only that which he had interest in. Galo's next argument is that the Guam Ancestral Lands Future Interest at issue is barred by the Rule Against perpetuities. (Pl's. Opp. at 13). Next, Galo argues that quitclaim deeds do not convey after-acquired title. (Pl's. Opp at 15.) This is because a quitclaim deed only conveys what the grantor had at the time of the deed as opposed to a future acquired interest. Also, Galo argues that the race-notice statute is inapplicable. *Id.* Lastly, Plaintiff argues that the pleadings from LR 80-74, submitted by William, are irrelevant. (Pl's. Opp. at 16).

On September 9, 2013, William filed a reply to Galo's opposition. William responds by arguing, despite Galo's reliance on Superior Court cases, which contradict the Supreme Court in *Taitano v. Lujan*, this Court is bound by principles of stare decisis, and therefore must follow the ruling in *Taitano*. (Def's Rep. at 5). Second, William counters that Catalina and Galo conveyed their property without reference to less than the entire property, and with reference to future interests. At the time of the taking, a future interest arose, and William relied on such promises and paid valuable consideration in exchange for the property described in the quitclaim deed. *Id.* Third, William responds by arguing that because the grantee was known at the time of the conveyance, there are no unvested interests, and therefore, the rule against perpetuities does not apply. Finally, William argues that the intent of the parties to deal concerning Lot 5280 is unambiguous given the words used on the deed. (Def's. Rep. at 8).

**DISCUSSION**

I. **Failure to State a Claim**

The first issue is whether Galo's quiet title complaint is sufficient to survive a motion to dismiss for failure to state a claim upon which relief can be granted. A court may dismiss a complaint "if it appears beyond doubt that the [non-moving party] can prove no set of facts in

support of his claim which would entitle him to relief." *Taitano v. Taitano*, 2009 Guam 9 ¶ 6 (citing *Vasques v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief 'requires more than labels and conclusions, and a formulaic recitation of a cause of action will not do." *Core Tech Int'l Corp. v. Hanil Eng'g & Const. Co., Ltd.*, 2010 Guam 13 ¶ 52 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "In reviewing such a motion, the court must 'construe the pleading in the light most favorable to the non-moving party, and resolve all doubts in the non-moving party's favor." *Taitano*, 2009 Guam 9 ¶ 6 (quoting *First Haw. Bank v. Manley*, 2007 Guam 2 ¶ 6). The factual allegations in the complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Title 21 GCA § 25101 authorizes actions to quiet title to real and personal property. Section 25101 provides in relevant part that: "An action may be brought by any person against another who claims an estate or interest in real or personal property, adverse to him, for the purpose of determining such adverse claim . . . ." 21 GCA § 25101. Galo alleges that "[o]n information and belief, Defendant may claim an interest and estate in such property adverse to the Estate of Catalina Eclavea Camacho's claim, right, title and interest" to which "Defendant is without any proper right to any such claim or interest . . . ." (Compl. ¶¶ 16-17). A review of the Complaint to Quiet Title shows that there is a dispute over the ownership and rights to the property in question.

The complaint specifically states that the U.S. government took only a certain portion of Lot 5280. (Compl. ¶ 6). Further, the complaint alleges that the only thing subsequently conveyed to [William] was another portion of Lot 5280 that was *not* taken by the U.S. government. (Compl. ¶ 10). Therefore, as a result of the U.S. government's eventual return of the condemned land, inclusive of Lot 5280, [Galo] alleges that [Catalina's estate] is the bona fide owner of a fee simple interest in that portion of Lot 5280, which was *not* conveyed to Defendant. (Compl. ¶ 16).

Construing William's motion in a light most favorable to Galo, the non-moving party, the Court is convinced that the facts pled are sufficient for a determination that a dispute exists over who can claim an interest in that portion of Lot 5280 that was returned. The Court finds that dismissal for failure to state a claim is not appropriate as there is sufficient factual matter, taken as true, that state a claim to relief that is plausible on its face. On that basis, the Court denies William's Motion to Dismiss for failure to state a claim upon which relief can be granted.

## II. Summary Judgment Standard

William argues, in the alternative, for summary judgment in his favor. Galo argues for the same in his cross summary judgment motion. Pursuant to GRCP 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. GRCP 56(c). A genuine issue exists when there is sufficient evidence establishing a factual dispute requiring resolution by a fact-finder. *Iizuka Corp. v. Kawasho Int'l Inc.*, 1997 Guam 10 ¶ 7; *T.W. Elect. Serv Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987). The factual dispute must concern a material fact. *Id.* Whether a fact is material is determined by the governing

substantive law; if the fact may affect the outcome, it is material. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Edwards Co . v. Kawasho Int'l Inc.*, 2000 Guam 27 ¶ 7.

Inferences must be drawn, evidence must be viewed in the light most favorable to the non-moving party and the moving party carries the burden of showing the Court those portions of the relevant documents which it believes demonstrate the absence of an issue of material fact. *Edwards Co. v. Kawasho Int'l Inc.*, 2000 Guam 27 ¶ 7. The moving party is not required to negate each element of the non-moving party's case. Rather, the moving party satisfies and discharges its burden by establishing the absence of evidence to support the non-moving party's case. *Kim v. Hong,* 1997 Guam 11. If a lack of evidence is established by the moving party, the non-moving party must present specific facts showing there is a genuine issue for trial. The non-moving party may not merely rely on conclusory allegations contained in the pleadings, but must present some significant probative evidence tending to support his assertion. *Id.* If the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, for which the party will bear the burden of proof at trial, then Rule 56(c) requires entry of summary judgment against the non-moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 31(1986).

William argues that when the U.S. government ultimately returned Lot 5280 back to Catalina, she had an enforceable right to that property. (Def's. Mot. at 6). As such, Catalina therefore had an alienable contingent future interest, which by operation of the deeds now belongs to William. William submits a Superior Court of Guam Notice of Filing of Petition for Registration of Title of Land (Case No. 80-74); William's Appearance and Answer in that case, which asserts that he is the owner of Lot 5280; and lastly, a declaration that asserts the same. (Def's Mot., Exhibit 1-2; Decl. of William M. Perez, Jul. 15, 2013).

In opposition, and in his cross-motion for summary judgment, Galo first argues that a future interest, or in this case a Guam Ancestral Lands Future Interest ("GALFI"), cannot be conveyed when the grantor had actual property to convey, and actually conveyed that property. (Pl's. Opp. at 7). In Support, Galo submits numerous declarations and exhibits. Those documents include a Certification of Real Property Tax Assessment and Value on Lot 5280, which indicates that through 1983-2012, William has paid taxes on Lot 5280, which consists of roughly 3,000 square meters. (Decl. of Benedict Atoigue, Ex. A, Aug. 12, 2013.) Galo also submits an Appraisal Report of the Retrospective Value of a Portion of Lot 5280, which states that the value of the property as of Dec. 31, 1967 was $3,000-$3,300. (Aff. of Thomas A. Elliot, Ex. C, Aug. 12, 2013.) Galo further submits documents indicating that William executed a Grant of Public Access and Utility easement that includes a map showing Lot 5280, which consists of roughly 3,000 square meters. (Aff. of Francisco L.G. Castro, Ex. A-E, Aug 12, 2013). Next, Galo submits documents to illustrate that the U.S. government did not condemn the entirety of Lot 5280 in in the 1950s, but instead it condemned only portions of Lot 5280, not including the green portion that Galo deeded to William. (Aff. of Francisco L.G. Castro, Ex. A-E, Aug. 12, 2013). Lastly, Galo submits that it was his understanding that at the time Catalina conveyed the property to him, she was only conveying that portion of Lot 5280, that was not condemned by the U.S. government because that was all that she owned at the time. (Aff. of Galo. E. Camacho, Ex. A-D, Aug. 12, 2013). On that basis, Galo submits that when he conveyed property to William for $1,500, he was only conveying the green portion of Lot 5280, which was not condemned by the U.S. government. *Id.*

Upon reviewing the submissions, the parties do not dispute the following. Catalina owned a piece of property known as Lot 5280. That property was condemned by the U.S. government. Catalina conveyed her interest in Lot 5280 to Galo. Galo conveyed his interest in

Lot 5280 to William. The U.S. government then returned the condemned land, which ultimately was returned to Catalina's estate. The issue before the Court is whether Galo's conveyance to William of a present interest in the green portion of Lot 5280 also entitles William to the rest of the Lot which was returned by the U.S. government.

Under Guam law, a future interest entitles "the owner to the possession of the property only at a *future period*." 21 GCA § 1221. "A future interest is contingent whilst the person in whom, or the event upon which, it is limited to take effect remains uncertain." In *Taitano v. Lujan*, 2005 Guam 26, the Guam Supreme Court visited issue regarding future interests and the conveyance of land condemned by the U.S. government. In that case, Maria Santos Lujan owned property in Tamuning, Guam. *Taitano* ¶ 2. When she died, her six children each inherited a one-sixth undivided interest in that property. *Id*. In the 1950's the U.S. government condemned a part of said property. *Id*. Notwithstanding the condemnation, three of Maria's children, Enrique, Isabel, and Paz each conveyed, by deed of gift, their one-sixth interest in the property to their nephew and son, Rafael. *Id*. Enrique executed the deed although he had executed a prior will leaving all of his estate to another nephew, Manuel. *Id*. When Enrique died in 1990, letters testamentary were issued to Manuel who listed the property as an asset of the estate. *Id*. ¶ 4. In 1994, the U.S. Congress passed legislation that called for the return of excess lands to the Government of Guam. *Id*. The Guam legislature then passed legislation expressing its intent to return the lands to the original owners. *Id*. ¶ 5. Manuel then filed a claim of interest to the condemned property and requested that it be returned to the Estate of Enrique. *Id*. ¶ 6. In 1997, the Superior Court of Guam entered a Decree of Final distribution in Enrique's probate case, distributing all of Enrique's property, including the previously condemned property, to Manuel. *Id*. Subsequently, Manuel as grantee and the Department of Land Management as grantor, executed a Grant of Contingent Future Interesting granting an

undivided on-sixth contingent future interest in the property. *Id.* In 2001, Manuel granted a durable limited power of attorney to Pedro to "maintain, oversea (sic), execute all transactions concerning [the property]." *Id.* ¶ 7. Pedro then quitclaimed the property to his son, Richard. *Id.* The property was ultimately returned to the heirs of Maria in 2003. *Id.* ¶ 8. Pedro then filed the quiet title action against Rafael. *Id.* ¶ 9. Rafael responded with a Motion to dismiss or in the alternative summary judgment. *Id.* The trial court eventually entered judgment decreeing that Pedro had no interest in the property. *Id.* ¶ 10.

The Supreme Court affirmed the trial court's judgment, finding that landowners could transfer their ownership interest in land condemned by the U.S. government even though they did not possess any present interest but only possessed an executory interest. *Id.* ¶ 56. The Supreme Court concluded that Guam law allows for the conveyance of this sort of interest, and further that the subsequently-acquired title doctrine applied in favor of grantees in this situation. *Id.*

The facts of the present case are distinguishable from those in *Taitano*. A fundamental distinction is that in *Taitano*, the Supreme Court gave effect to a deed that conveyed land that the grantor did not own. Here, Galo conveyed to William a present interest in property he actually owned at the time. The evidence that has been put forth illustrates that William knew this to be true. For the years 1983-2012, Galo had been paying property taxes on the land he purchased which consisted of roughly 3,000 square meters. (Decl. of Benedict Atoigue, Ex. A, Aug. 12, 2013.) Galo paid $1,500.00 for the land, which was later declared to be on the lower end of valuation. (Aff. of Thomas A. Elliot, Ex. C, Aug. 12, 2013.) Galo executed a Grant of Public Access and Utility easement that includes a map showing Lot 5280 consisting of only 3,000 square meters. (Aff. of Francisco L.G. Castro, Ex. A-E, Aug 12, 2013). Considering that,

the Court is convinced that William got exactly what he paid for, and was in fact knowledgeable of that fact.

## A. Subsequently-Acquired Title Doctrine

The Court is not convinced that the subsequently-acquired title doctrine is applicable to the facts of the present case. The subsequently-acquired title doctrine provides that "[w]here a person purports by proper instrument to grant real property in fee simple, and subsequently acquires any title, or claim of title thereto, the same passes by operation of law to the grantee, or his successors." 21 GCA § 4203. "The policy behind the doctrine is to protect an unwitting grantee who relies upon the good title of the grantor when the latter does not possess legal or perfect title to the property." *Taitano* ¶ 45. "It prevents a party from validly conveying his interest, whether it is an executory, contingent or a vested future interest, and then claiming that the prior conveyance meant nothing." *Id*. In the present case, Galo is not arguing that his conveyance to William meant nothing. In fact, Galo is not asking for a return of the green portion that he conveyed to William. (Aff. of Galo Camacho ¶ 14, Aug. 6, 2013). Instead, he is arguing that effect should be given to what both parties bargained for, which was a conveyance of only the green portion—as evidenced by the price paid for the land, the subsequent payment of taxes relative to such property, and the easement granted by William, of which the submitted map illustrates the property as corresponding to the size of the green portion.

## B. Quitclaim Deeds

The quitclaim deeds in this case conveyed only that portion of Lot 5280, which Catalina and, subsequently Galo, possessed an interest. "A quitclaim deed by its very nature conveys only what the grantor has. It is established that a quitclaim deed would not suffice to pass this not-yet-acquired title." *Taitano* ¶ 48. Where "[i]t appears that the intention of the parties was to convey the fee simple or any definite estate in the land, effect will be given to such intention,

and the deed will operate by way of estoppel, so that any estate subsequently acquired by the grantor will inure to the grantee . . . even in the absence of any warranty whatever." *Taitano* ¶ 49 (citing *Balch v. Arnold*, 59 P.434, 436 (Wyo. 1899)). William argues that it was both Catalina and Galo's intention to transfer fee simple title as evidenced by the transfer of "all" of Lot 5280, "[t]ogether with all the tenements, hereditaments and appurtenances thereunto belonging, or appertaining and the reversions, remainder and remainder rents, issues and profits thereof." (Def's. Mot at 8). Galo argues that the quitclaim deeds did not convey a future interest. (Pl's. Opp. at 10). For support, Galo cites to a Superior Court of Guam case, *Aflague v. Moylan, Guam Super. Ct.* CV0570-10 at 4-7 (D&O, May 6, 2013). In *Aflague*, the court ultimately held that the quitclaim deed therein did not grant any future interest or after acquired interest in the lots conveyed. *Aflague* at 7. The court found that "Aflague only conveyed the rights or interests he held, which was the right to receive land condemnation compensation." *Id.* at 4.

In this case William argues that *Aflague* does not support Galo's position because that case did not hold that no future interest may be conveyed by quitclaim deed. (Def's. Reply at 3). Further, William argues that *Aflague* impermissibly contradicts and misinterprets the Supreme Court's holding in *Taitano*. *Id.* The Court, however, emphasizes that the deeds in this case and in *Aflague* were quitclaim deeds, unlike the grant deed used in *Taitano*. On that basis, the Court is convinced that quitclaim deeds in this case, conveyed to William only the green portion of Lot 5280, which Galo owned at the time.

**C. Guam's Race-Notice Statute**

Guam's race-notice statute is not dispositive of the instant matter. William argues that his claim to the property is Superior to Galo's pursuant to Guam's race notice statute. (Def's Mot. at 8).

Title 21 GCA § 37102 provides that

> Every conveyance of real property, other than a lease for a term not exceeding one (1) year, is void as against any subsequent purchaser or mortgagee of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded, and as against any judgment affecting the title, unless such conveyance shall have been duly recorded prior to the record of notice of action.

21 GCA § 37102. William argues that the deed from Galo was recorded in 1967, prior to any conveyance to Catalina's estate. (Def's. Mot. at 8). Galo asserts that the recordation of the 1967 deed from Galo is not determinative because it does not resolve the question of whether that deed conveyed only the portion of Lot 5280 that Galo owned at the time, or some interest that the U.S. government owned in fee simple at the time. The Court agrees. If the recordation of the deed from Galo covers only the piece of property that Galo owned at the time, then it is irrelevant, as Galo is not claiming any rights in that portion of the property. However, because the more apposite issue is what was actually conveyed, the mere recordation of Galo's conveyance to William is not dispositive of this matter.

## D. Rule Against Perpetuities

Galo also argues that the purported future interest that William allegedly purchased is void under the rule against perpetuities. The Supreme Court in *Taitano* did not discuss the application of the rule against perpetuities. The issue, however, was raised in *Alcantara v. Lujan*, but the court therein found it unnecessary to analyze as it held that no contingent future interest was retained in the condemned land. *Alcantara v. Lujan*, Guam Super. Ct. Civil Case No CV0484-05 at 22 (D&O, Aug. 21 2008).

"In its simplest terms, the rule against perpetuities 'makes void any contingent interest created in a transferree which, viewed from the moment of its creation, is not certain to vest within the life of a person living at the time the interest is created, plus 21 years." *Alcantara* at 18. Galo argues that from the moment the future interest was allegedly created, there was no

certainty that the land would be returned, much less occur within 21 years of a life in being. (Pl's. Opp. at 13). William argues that there is no unvested interest involved that would invoke the application of the rule against perpetuities. (Def's. Reply at 6). Furthermore, William argues that his identity as the recipient of legal title to nothing other than Lot 5280 has never been uncertain; therefore, because this case involves a vested interest, the rule against perpetuities does not apply. *Id.* The Court disagrees.

William cites to *Estate of Washburn*, 11 Cal. App. 735, 740, 106 P. 415, 417, for the distinction between a vested and contingent remainder. The court in that case determined

> The broad distinction between vested and contingent remainders is this: In the first, there is some person in esse, known and ascertained, who, by the will or deed creating the estate, is to take and enjoy the estate upon the expiration of the existing particular estate, *and whose right to such remainder no contingency can defeat*. In the second, it depends upon the happening of a contingent event whether the estate as a remainder shall ever take effect at all. It may never happen, or it may happen until after the particular estate upon which it depends shall have been terminated, so that the estate in remainder will never take effect.

*Estate of Washburn*, 11. Cal.App. 735, 740, 106 P. 415, 417.

The Court emphasizes that under vested remainders, the holder's right cannot be defeated by a contingency. Applying that to the case at bar, even if the Court were to agree that the remainder was "vested" in William, the contingency of the U.S. government ever returning the land could have never happened, thus possibly defeating any "vested" right. Thus, the Court finds that William's purported rights were not "vested" at the time of conveyance. As a result, the purported interest, premised on events that might have never occurred is contingent, and triggers application of the rule against perpetuities. Because the rule against perpetuities "makes void any contingent interest created in a transferree which, viewed from the moment of its creation, is not certain to vest within the life of a person living at the time the interest is created, plus 21 years," the Court agrees with Galo that the future interest that William allegedly purchased violates the rule against perpetuities.

Applying the undisputed facts to the applicable legal standard in light of Guam law precedent, the Court finds that Galo is entitled to a judgment quieting title in that portion of Lot 5280 most recently returned by the U.S. government. Having found that Galo is entitled to quiet title to the property, William's motion to dismiss or in the alternative summary judgment is denied.

## CONCLUSION

Based on the foregoing reasons, Plaintiff Galo Camacho's Cross-Motion for summary judgment is hereby GRANTED. As a result, Defendant William Perez's Motion to dismiss and Motion for summary judgment is hereby DENIED. In accordance with this order, Plaintiff shall submit a proposed judgment approved as to form by all parties within fifteen (15) days of the issuance of this decision and order.

**IT IS SO ORDERED** this day of April 25, 2014.

_____
HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam